UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| IN RE: | Case No.: 18-31692 (AMN) |
| DONNA L. CALANDRELLI CAPASSO<br>*Debtor* | Chapter 7 |
| DONNA L. CALANDRELLI CAPASSO<br>*Plaintiff* | AP Case No.: 19-03007 (AMN) |
| v. | |
| MIDLAND FUNDING, LLC<br>*Defendant* | RE: AP-ECF No. 22 |

## MEMORANDUM OF DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING ADVERSARY PROCEEDING

APPEARANCES

*Counsel for the Plaintiff:*

David C. Pite, Esq.
Pite Law Office LLC
1948 Chapel Street
New Haven, CT 06515

*Counsel for the Defendant:*

A. Michelle Hart Ippoliti, Esq.
McCalla Raymer Liebert Pierce, LLC
1544 Old Alabama Road
Roswell, GA 30076

Linda St. Pierre, Esq.
McCalla Raymer Liebert Pierce, LLC
50 Weston Street
Hartford, CT 06120

Midland Funding, LLC ("Midland") seeks summary judgment and dismissal of a preference claim brought by Donna L. Calandrelli Capasso (the "Debtor"), asserting the transfer date for purposes of a preference claim under the Bankruptcy Code[1] is the date

---

[1] The Bankruptcy Code is found at Title 11, United States Code. Unless otherwise noted, statutory references are to the Bankruptcy Code.

1

a bank execution is served on the bank. The Debtor and plaintiff defends, arguing the "transfer" caused by the bank execution is not completed until the resolution of any claim to exemption. If Midland is correct, then the Debtor's preference claim fails because it occurred outside of the ninety (90) day preference period set forth in 11 U.S.C. § 547(b)(4)(A). If the Debtor is correct and the relevant transfer date is when a state court denied the Debtor's exemption claim as to the bank execution, several months later, the transfer date within the ninety (90) day preference period.

In essence, the parties ask whether the court agrees with and adopts the clear majority view set forth in *Lind v. O'Connell* (*In re Lind*), 223 B.R. 64 (Bankr.D.Conn. 1998)(Shiff, J., Ret.), and its analysis of Connecticut statutory bank execution procedures pursuant to Conn.Gen.Stat. § 52-367b. After review, the court concludes the date of service of a bank execution is the transfer date for purposes of a preferential transfer claim under § 547, consistent with Judge Shiff's 1998 ruling in *Lind*. Accordingly, Midland's Motion for Summary Judgment is **GRANTED**.

**I.    JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. § 1334(b). This court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (F). This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

## II.    PROCEDURAL BACKGROUND

On October 13, 2018 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 bankruptcy petition.  ECF No. 1.  On June 21, 2019, the Debtor initiated this adversary proceeding, alleging Midland had obtained funds in the amount of $11,211.65 from a bank account held jointly by the Debtor and her mother within the ninety (90) days preceding the Petition Date.  AP-ECF No. 1.  On July 25, 2019, Midland moved to dismiss the complaint.  AP-ECF No. 5.  In its motion to dismiss, Midland asserted it had perfected its interest outside the preference period, on February 15, 2018.  AP-ECF No. 5.  During a Pre-Trial Conference held on September 25, 2019, the court noted that Midland's motion to dismiss required the court to accept the factual assertion that perfection had occurred February 15, 2018, a fact not alleged in the debtor's complaint.  *See*, AP-ECF No. 15.  Consistent with the conversation during the hearing, it was agreed the motion to dismiss would be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), made applicable here by Federal Rule of Bankruptcy Procedure 7012(b), and the court ordered compliance with D.Conn.L.Civ.R. 56(a).  AP-ECF No. 18.

On October 22, 2019, Midland filed the instant Motion for Summary Judgment in support of its position that the date of service of a bank execution on the bank is the transfer date for purposes of a preferential transfer claim.[2]  AP-ECF No. 22.  Also filed by Midland was the affidavit of Jeanine M. Dumont and a Local Rule 56(a)1 Statement of Undisputed Material Facts (the "Rule 56(a)1 Statement").  AP-ECF No. 22.  On November 8, 2019, the Debtor filed a response to the Motion, as well as a memorandum of law, a supporting affidavit, an exhibit, and a Local Rule 56(a)2 Statement of Undisputed and Disputed Material Facts (the "Rule 56(a)2 Statement"), all in support of her stance that

---

[2]    Fed.R.Civ.P. 56 applies here, made applicable through Fed.R.Bankr.P. 7056.

the date the funds were transferred by the bank to Midland – after the resolution of the exemption process in the state court – is the date relevant to a preference claim under Bankruptcy Code § 547.  AP-ECF No. 23.

### III.     UNDISPUTED FACTS

The following facts are undisputed:

On October 9, 2013, Midland obtained a judgment against the Debtor in the Superior Court of Connecticut.  AP-ECF No. 22 ¶ 2; AP-ECF No. 23 ¶ 2.  Over four years later, on January 11, 2018, Midland sought a writ of execution, commonly referred to as a bank execution, from the state court to collect on the judgment.  AP-ECF No. 22 ¶ 3; AP-ECF No. 23 ¶ 3.  Service on Webster Bank of the notice of execution occurred on or before April 10, 2018 (the "Service Date").  AP-ECF No. 22 ¶ 4; AP-ECF No. 23 ¶ 4.  On April 30, 2018, the Debtor sought to exempt the funds held in her Webster Bank account through the Connecticut statutory procedure for adjudicating in the state court whether any funds are protected from execution.  AP-ECF No. 22 ¶ 5; AP-ECF No. 23 ¶ 5.  Over two months later, on July 12, 2018, the state court denied the exemption claim.  AP-ECF No. 22 ¶ 8; AP-ECF No. 23 ¶ 8.  On July 16, 2018 (the "Receipt Date"), Webster Bank transferred $11,211.65 to Midland.  AP-ECF No. 22 ¶ 9; AP-ECF No. 23 ¶ 9.[3]  The Petition Date of October 13, 2018, rendered the Service Date outside the ninety (90) day preference period, and the Receipt Date within the ninety (90) day preference period.

### IV.     THE DEBTOR'S DISPUTED FACTS

In her Rule 56(a)2 Statement, the Debtor adds the following factual allegations.

---

[3]   The Debtor's Rule 56(a)2 Statement contains sequential numbered paragraphs but omits a seventh (7th) paragraph.  *See*, AP-ECF No. 23.  Thus, numbered paragraphs eight (8) and nine (9) are the seventh (7th) and eighth (8th) paragraphs, respectively.  For clarity, the court notes that citations to the Debtor's Rule 56(a)2 Statement refer to the paragraphs as they are numbered in the Debtor's Rule 56(a)2 Statement.

4

On the Service Date, a second writ of execution was served on Webster Bank pursuant to a judgment held by Portfolio Recovery Associates, LLC (the "Other Judgment Creditor"), in the amount of $11,832.55. AP-ECF No. 23 ¶ 4. The Debtor's exemption claim related to the executions of both Midland and the Other Judgment Creditor, and after the state court denied the exemption claim, Webster Bank transferred funds in the amount of $11,211.65 to Midland and funds in the amount of $11,832.55 to the Other Judgment Creditor on the Receipt Date. AP-ECF No. 23 ¶¶ 5, 8. The Chapter 7 Trustee later recovered the $11,832.55 received by the Other Judgment Creditor purportedly as a preferential transfer.[4]  AP-ECF No. 23 ¶ 8.

## V.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 80 (2d Cir. 2018) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a))). A movant for summary judgment "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer*, 887 F.3d at 114 (quoting *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)).

## VI.   THE PARTIES' LEGAL ARGUMENTS

As noted, Midland relies on *Lind v. O'Connell (In re Lind)*, 223 B.R. 64, 68 (Bankr.D.Conn. 1998), to assert the Service Date is the date of the transfer for purposes of § 547(b)(4)(A) because service of the writ of execution perfected Midland's interest in

---

[4]    The record of this case reflects that the Other Judgment Creditor turned over the funds to the Chapter 7 Trustee in response to a demand letter and did not contest the Chapter 7 Trustee's demand. *See*, ECF No. 34, p. 6–7 (Chapter 7 Trustee's Final Account and Distribution Report), case number 18-31692.

5

the funds held in the Debtor's bank account up to the amount of its judgment.  AP-ECF No. 22.

In response, the Debtor preliminarily asserts that Ms. Dumont's affidavit supporting Midland's Motion for Summary Judgment is not based not upon personal knowledge, but upon hearsay.  Second, though acknowledging *Lind*'s relevance here, the Debtor finds *Lind* inapplicable or alternatively, asks the court to reassess *Lind*'s interpretation of the Connecticut statute governing the bank execution process, Conn.Gen.Stat. § 52-367b.  AP-ECF No. 23.  To that end, the Debtor contends that Conn.Gen.Stat. § 52-367b does not grant a secured lien to the judgment creditor upon service and further asserts that a judgment creditor cannot hold a secured lien, and a transfer cannot occur, until the state court resolves any exemption claim.  AP-ECF No. 23.  The Debtor distinguishes *Lind* on grounds that (1) this case involves a joint bank account, rather than an account held only by the judgment debtor, (2) the bank account was subject to a simultaneously-filed execution, as opposed to the single execution filed in *Lind*, and (3) the Debtor filed an exemption claim in state court whereas in *Lind*, the debtor did not pursue an exemption claim.  AP-ECF No. 23.  Further, the Debtor believes *Lind* should be reconsidered as both contrary to public policy, because it discourages judgment debtors from seeking an exemption claim, and against general practice, as shown by the facts related to the Trustee's recovery from the Other Judgment Creditor.  AP-ECF No. 23.

### VII.   APPLICABLE LAW

#### 1. Preferential Transfers

The Bankruptcy Code permits avoidance of certain pre-petition transfers as preferences pursuant to § 547, providing as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—

6

>    (1) to or for the benefit of a creditor;
>    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>    (3) made while the debtor was insolvent;
>    (4) made—
>        (A) on or within 90 days before the date of the filing of the petition; . . . and
>    (5) that enables such creditor to receive more than such creditor would receive if—
>        (A) the case were a case under chapter 7 of this title;
>        (B) the transfer had not been made; and
>        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
>
> 11 U.S.C. § 547(b).

Avoidance of preferential transfers performs the two functions of: (1) discouraging creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy"; and, (2) "facilitat[ing] the prime bankruptcy policy of equality of distribution among creditors of the debtor." *Union Bank v. Wolas*, 502 U.S. 151, 161 (1991) (quoting H.R.Rep. No. 95-595, pp. 177–78, U.S. Code Cong. & Admin. News 1978, pp. 6137–38).

While § 547 refers only to a trustee's ability to avoid preferential transfers, a debtor derives standing to do the same under § 522. Subject to limitations set forth in §§ 522(g), 522(i)(1), and 550(a), a debtor is permitted to "avoid a transfer of property of the debtor . . . to the extent that the debtor could have exempted such property. . . ." 11 U.S.C. § 522(h).[5]

Relevant here is § 547's requirement that the "transfer of an interest of the debtor in property . . . (4) [be] made (A) on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b). The Bankruptcy Code defines a "transfer" as:

---

[5] Notwithstanding the state court decision denying the Debtor's request for exemption in the disputed funds, the Debtor listed the Midland funds on her schedule of claimed exemptions, utilizing the federal exemption scheme set forth in § 522, asserting an exemption for the full amount pursuant to § 522(d)(5). *See,* ECF No. 1, p. 17 (Debtor's Schedule C), case number 18-31692. While not reaching whether the Debtor had an enforceable claim for exemption in the joint account, the Debtor's right to assert the federal exemption confers standing to bring the preference claim here.

7

    (A) the creation of a lien;
    (B) the retention of title as a security interest;
    (C) the foreclosure of a debtor's equity of redemption;
    (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
        (i)    property; or
        (ii)   an interest in property.
11 U.S.C. § 101(54).

A lien is defined as, "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). A judicial lien is defined as, a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

Federal law controls "[w]hat constitutes a transfer and when it is complete." *Barnhill v. Johnson*, 503 U.S. 393, 397 (1992). "In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law." *Barnhill*, 503 U.S. at 398.

Section 547(e) fixes the time of a transfer as follows:

(1) For purposes of this section . . . a transfer is made—
    (B) a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.
(2) For purposes of this section . . . a transfer is made—
    (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time . . .; [or]
    (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days.
11 U.S.C. § 547(e)

*See also*, *Fidelity Fin. Servs., Inc. v. Fink*, 522 U.S. 211, 216 (1998) ("[A] transfer is "perfected" only when the secured party has done all the acts required to perfect its interest. . . .").

8

Connecticut statute outlines the procedure for obtaining a bank execution where the judgment debtor is a natural person. *See*, Conn.Gen.Stat. § 52-367b. The procedure may be summarized as follows:

> Under [§ 52-367b], executions may be granted against the accounts of a judgment debtor held by a bank. After an execution is obtained from the state court, a sheriff is directed to serve the execution, an affidavit, and an exemption claim form upon the bank. After those papers have been served, the bank is required to remove the amount of the indebtedness from the judgment debtor's account by the midnight deadline, *i.e.*, midnight on the next banking day following the day of service.[6] *The bank is not required to give prior notice to the debtor.* The bank must then mail copies of the served documents to the judgment debtor and hold the amount of the indebtedness for 15 days from such mailing in a segregated account. The judgment debtor is given 15 days to notify the bank that an exemption will be claimed as to the segregated funds. If the judgment debtor claims an exemption, a hearing is scheduled to resolve any resulting dispute. Failure to assert an exemption will result in the payment to the sheriff of the amount withheld. The sheriff then pays that amount, less a sheriff's fee, to the judgment creditor.
>
> *Lind*, 223 B.R. at 68 (internal citations omitted and emphasis supplied); *see*, Conn.Gen.Stat. § 52-367b(b)–(j).

---

[6] The process for removal of funds from the judgment debtor's account is the subject of Conn.Gen.Stat. § 52-367b(c), which provides as follows:

If any such financial institution upon which such execution is served and upon which such demand is made is indebted to the judgment debtor, the financial institution shall remove from the judgment debtor's account the amount of such indebtedness not exceeding the amount due on such execution before its midnight deadline, as defined in section 42a-4-104. Notwithstanding the provisions of this subsection, if electronic direct deposits that are readily identifiable as [specified exempt funds], then the financial institution shall leave the lesser of the account balance or one thousand dollars in the judgment debtor's account, provided nothing in this subsection shall be construed to limit a financial institution's right or obligation to remove such funds from the judgment debtor's account if required by any other provision of law or by a court order. The judgment debtor shall have full and customary access to such funds left in the judgment debtor's account pursuant to this subsection. The financial institution may notify the judgment creditor that funds have been left in the judgment debtor's account pursuant to this subsection. Nothing in this subsection shall alter the exempt status of funds which are exempt from execution under subsection (a) of this section or under any other provision of state or federal law, or the right of a judgment debtor to claim such exemption. Nothing in this subsection shall be construed to affect any other rights or obligations of the financial institution with regard to the funds in the judgment debtor's account.
Conn.Gen.Stat. § 52-367b(c).

9

The only decision to interpret Conn.Gen.Stat. § 52-367b in this context is *Lind v. O'Connell*, a 1998 decision addressing the precise issue raised here. Connecticut's bank execution statute is substantively the same as it was when *Lind* was decided in 1998.

### *Lind v. O'Connell*

*Lind* considered the question of when a "transfer" occurs for purposes of evaluating a preferential transfer claim under bankruptcy law when funds are obtained by bank execution following Connecticut law. *See*, *Lind*, 223 B.R. at 67. *Lind* was decided against the backdrop of a series of Circuit Court decisions that, until 1995, had uniformly held that a transfer occurs when an execution or garnishment of a bank account is served. *See*, *In re Battery One-Stop Ltd.*, 36 F.3d 493, 498 (6th Cir. 1994) (holding under Ohio law that transfer occurs "upon service of the garnishment order and notice on the garnishee bank"); *Phillips v. MBank Waco, N.A. (Matter of Latham)*, 823 F.2d 108, 110 (5th Cir. 1987) (*per curiam*) (holding under Texas law that the transfer of property rights occurred upon service of the writ of garnishment); *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir. 1968) (holding under Maryland law that the service of an attachment creates an inchoate lien that cannot be avoided as a preference if such service occurs prior to the preference period). In 1995 the Court of Appeals for the Seventh Circuit broke with the other three Circuit Court decisions and held pursuant to Indiana law that an order releasing garnished funds to the judgment creditor is the transfer date in a preferential transfer action. *Freedom Grp., Inc. v. Lapham-Hickey Steel Corp. (Matter of Freedom Grp., Inc.)*, 50 F.3d 408, 412 (7th Cir. 1995).[7] In a decision that has since remained the minority viewpoint, the *Freedom Group* court diverged from the other Circuit Courts by

---

[7] The Debtor did not cite this case, but the Debtor's arguments are similar to the Seventh Circuit's minority view.

focusing not on the time of the judgment creditor's acquisition of an interest in the contents of the subject bank account, but on the purpose of the preferential transfer statute, the "tentative nature" of service of a notice of garnishment of a bank account, and the Supreme Court's reasoning in *Barnhill v. Johnson*, *supra*.  *See, Freedom Grp.*, 50 F.3d at 410–12.

Considering an issue of first impression in the Second Circuit and noting a lack of Connecticut authority regarding whether another creditor can acquire a superior lien between the service of a writ of execution and the receipt of the levied funds, the *Lind* court held in accordance with the majority of Circuit Court decisions that perfection occurs when the bank is served with the writ of execution. *Lind*, 223 B.R. at 68.  The court's holding was guided by three rationales. *See, Lind*, 223 B.R. at 68–69.

First, the *Lind* court considered the Supreme Court's reasoning in *Barnhill v. Johnson*, *supra*, holding that a transfer occurs when a check is honored, rather than when it is received by the payee. *Lind*, 223 B.R. at 68.  The Supreme Court reasoned that the recipient of a check holds no rights to funds held in a checking account until the check is honored and further, holds no rights against the payor bank. *Lind*, 223 B.R. at 68 (citing *Barnhill*, 503 U.S. at 393).  In contrast to the recipient of a check, the *Lind* court observed, a judgment creditor acquires "significant rights" against the bank account upon service of the writ of execution, including liability of the financial institution to the judgment creditor under Conn.Gen.Stat. § 52-367b(n) for failure or refusal to turn over non-exempt funds. *Lind*, 223 B.R. at 68.

Second, the *Lind* court rejected the assertion that the right to claim an exemption is relevant to the transfer analysis. *Lind*, 223 B.R. at 69. Perfection is concerned with the priority of liens held by judgment creditors, as opposed to the exemption process which

11

addresses disputes between the judgment creditor and the judgment debtor, not whether the judgment creditor achieved perfection of its lien. *Lind*, 223 B.R. at 69.

Finally, the court addressed the statutory provision permitting a bank to exercise its right of setoff after service of the writ of execution. *Lind*, 223 B.R. at 69. Although a right of setoff may be superior to a writ of execution, the bank must exercise that right before the midnight deadline, defined by Conn.Gen.Stat. § 42a-4-104(a)(10) as "midnight on [the bank's] next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." *Lind*, 223 B.R. at 69; *see*, Conn.Gen.Stat. § 52-367b(c). Connecticut law does not permit any other intervening judgment creditor to exercise a right to setoff. *Lind*, 223 B.R. at 69. Thus, the *Lind* court concluded, Conn.Gen.Stat. § 52-367b "operates to limit an intervening creditor's reach of the segregated funds." *Lind*, 223 B.R. at 69. Section 52-367b(n) further protects a judgment creditor's interest in the judgment debtor's bank account by holding the bank liable for failing or refusing to turn over the amount of indebtedness. *Lind*, 223 B.R. at 69. For these reasons, the *Lind* court held that service of a writ of execution pursuant to Conn.Gen.Stat. § 52-367b effects a transfer for purposes of Bankruptcy Code § 547.

After *Lind*, bankruptcy courts have adopted the majority view to hold that a transfer for preference purposes under Bankruptcy Code § 547 occurs upon service. *See*, *In re Clevinger*, No. 18-71263, 2019 WL 2487640, at *2 (Bankr. W.D. Va. June 13, 2019) (holding that a transfer occurs under § 547 when a creditor obtains an interest in the debtor's property, not when the debtor's interest in the property expires); *In re Bensen*, 262 B.R. 371, 379 (Bankr. N.D. Tex. 2001) (concluding that service of a writ of garnishment creates a lien subject to avoidance under Texas law); *cf.*, *New Life Builders,*

12

*Inc. v. Perfetti Builder's Hardware, Inc. (In re New Life Builders, Inc.)*, 241 B.R. 507, 509 (Bankr. W.D.N.Y. 1999) (holding pursuant to express New York statute, "[T]he delivery of an execution to the sheriff will effect a lien that is superior to the rights of all other transferees."); *contra*, *Home Casual Enter., Ltd. v. Kasdorf*, No. 15-CV-803-WMC, 2017 WL 4358774 at *4–5 (W.D. Wis. Sept. 30, 2017) (applying binding Seventh Circuit precedent in *Freedom Group* to affirm a bankruptcy court's determination that the transfer occurred on the date the state court entered a garnishment judgment pursuant to Wisconsin law, not the date service of the garnishment complaint was accepted). Connecticut bank execution procedure has not substantively changed, and *Lind* remains the law.

### 2. Joint Bank Accounts

In *Fleet Bank Connecticut, N.A. v. Carillo*, 240 Conn. 343 (Conn. 1997), the Supreme Court of Connecticut held, "a judgment creditor may enforce a statutory right to a bank execution, pursuant to General Statutes § 52-367b,[] against the entire balance of a joint bank account to which both a judgment debtor and his nondebtor spouse have contributed funds." *Fleet Bank*, 240 Conn. at 345. In defining the scope of a judgment creditor's property interest, the *Fleet Bank* court left undisturbed *Grodzicki v. Grodzicki*, 154 Conn. 456, 463 (Conn. 1967), where it held that the predecessor to Conn.Gen.Stat. § 36a–290(a) "does not determine the respective rights of the parties *inter vivos*." *Grodzicki*, 154 Conn. at 463; *see also*, *Durso v. Vessichio*, 79 Conn. App. 112, 117 (Conn. App. 2003). In sum, under Connecticut law, a "noncontributing coholder's sufficient property interest [in a joint account] cannot be enforced for her own benefit but only for the benefit of her judgment creditors." *In re Riemann*, No. 09-30226LMW, 2009 WL 3254486, at *3 (Bankr. D. Conn. Oct. 7, 2009) (internal quotations omitted).

### 3. Affidavits as Evidence at Summary Judgment

Federal Rule of Civil Procedure 56 provides, "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). A federal court may consider hearsay evidence at the summary judgment stage upon a showing that admissible evidence will be available at trial.[8] *Nyack v. S. Conn. State Univ.*, 424 F.Supp.2d 370, 374 (D. Conn. 2006) (citing *Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)); *see also*, *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999).

## VIII. DISCUSSION

The salient facts are undisputed. The parties generally agree that the Service Date occurred on or before April 10, 2018 – before the ninety (90) day preference period began on July 15, 2018 – and that Webster Bank transferred $11,211.65 to Midland on July 16, 2018, within the preference period for this case. *See*, AP-ECF No. 22 ¶¶ 4, 9; AP-ECF No. 23 ¶¶ 4, 9.

Although the Debtor asks the court to discount the supporting affidavit of Jeanine M. Dumont, the evidentiary questions the Debtor raises are inconsequential. Regardless of whether Ms. Dumont's affidavit complies with Federal Rule of Civil Procedure 56(c)(4) and the limitations on the use of hearsay at summary judgment, the Debtor's Rule 56(a)2 Statement admits service of the writ of execution occurred on or before April 10, 2018,

---

[8] Hearsay is defined as a "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." F.R.E. 801(c); *see*, *Davis v. Velez*, 797 F.3d 192, 200 (2d Cir. 2015). An exception must apply for hearsay to be admissible. F.R.E. 802.

and includes as an exhibit the notice to the Debtor that a writ of execution had been served. *See*, AP-ECF No. 23 ¶ 4, Exhibit A. Based on this admission and the attached exhibit, the court need not rely on Ms. Dumont's affidavit to accept the alleged Service Date as fact and to find the material facts undisputed.

Additionally, the Debtor's Rule 56(a)2 Statement includes allegations regarding a second transfer to the Other Judgment Creditor. *See*, AP-ECF No. 23 ¶ 8. The Debtor makes much of the fact that the Trustee recovered the funds subject to this transfer as shown by a notation in the Trustee's Final Report, filed in the underlying bankruptcy case. *See*, ECF No. 34,p. 6–7 (Chapter 7 Trustee's Final Account and Distribution Report), case number 18-31692. However, in the absence of any additional facts or procedural context I decline to draw the inference the Debtor seeks, which is to conclude that since another judgment creditor succumbed to the Trustee's demand, as a matter of law Midland should do so as well. The Trustee's recovery of the funds obtained by the Other Judgment Creditor is simply immaterial to the resolution of Midland's Motion for Summary Judgment.

Turning to the Debtor's legal argument, I am persuaded – consistent with the reasoning of *Lind*, the majority of Circuit Court decisions, and *Barnhill* – that service of the writ of execution perfects the judgment creditor's interest and forecloses a competing creditor on a simple contract from acquiring a superior interest. Based on the undisputed facts here, I agree with the *Lind* court's reasoning and ultimate conclusion that the transfer for purposes of § 547 occurs upon service of the writ of execution under Connecticut law. The fact that the subject bank account was held jointly by the Debtor and her mother is irrelevant and does not change this analysis. *See*, *Fleet Bank*, 240 Conn. at 345. Similarly, the Debtor's pursuit of an exemption claim merely created a dispute between

the Debtor and Midland concerning the amount of funds Midland was entitled to and did not implicate § 547(e)'s concern with the moment a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee. *See*, *Lind*, 223 B.R. at 69.

This result is consistent with the analysis of pre-judgment remedies. *See*, Conn.Gen.Stat. § 52-278a, *et. seq.* Under Connecticut law, upon commencing an action, a plaintiff may immediately move to attach real or personal property of a defendant up to the amount of the expected judgment. Conn.Gen.Stat. §§ 52-278a–52-278g. A plaintiff perfects a pre-judgment attachment of real property by recording a writ of attachment on the land records. Conn.Gen.Stat. § 52-285. A pre-judgment attachment of personal property – such as property of the debtor held by a bank – is perfected by service of the writ of execution on the party holding the property subject to attachment. Conn.Gen.Stat. § 52-329; *see*, *Hosp. of St. Raphael v. New Haven Sav. Bank*, 205 Conn. 604, 608 (Conn. 1987). If a judgment enters in the plaintiff's favor, the judgment lien relates back to the date of the pre-judgment attachment. *See*, Conn.Gen.Stat. §§ 52-380a, 52-380c; *see also*, *Mac's Car City, Inc. v. DiLoreto*, 238 Conn. 172, 180–83 (Conn. 1996). Thus, the date of perfection of the pre-judgment attachment is the operative date for a preference claim under § 547. *See*, *In re Shivani*, No. 03-30930 (LMW), 2004 WL 484549, at *3 (Bankr. D. Conn. Mar. 11, 2004) ("Under Connecticut law, prior to entry of judgment a duly-recorded attachment is an "inchoate" lien upon the subject property. . . . [E]ven an "inchoate" prepetition lien is a "lien" within the purview of [11 U.S.C.] § 101(37).") (internal citations omitted); *cf.*, *People's Bank v. Bilmor Bldg. Corp.*, 28 Conn. App. 809, 819–20 (Conn. App. 1992) (concluding that the contingent nature of a cause of action has no bearing on whether a pre-judgment remedy is warranted).

16

The Debtor's plea that I should depart from *Lind* based on a public policy argument similarly fails. The Connecticut bank execution procedure already protects exempt funds by providing a process by which a judgment debtor may claim an exemption. This statutory process allowed the Debtor to assert that the funds in the bank account were exempt funds, and had her exemption claim succeeded, she would have been entitled to a return of the exempt funds still held at that time by the financial institution. Though the Debtor here is foremost concerned with the possibility of a judgment debtor losing the opportunity to recover levied funds through a preference action in bankruptcy if any exemption claim is not resolved within ninety (90) days of service, nothing prevents a judgment debtor with a pending exemption claim from filing a bankruptcy petition if the exemption claim is not promptly resolved. As a result, the protections provided by the statutory scheme governing bank executions and the Bankruptcy Code accommodate the public policy concerns raised by the Debtor and do not change my conclusion.

For these reasons, I conclude the transfer date for purposes of a preferential transfer claim pursuant to § 547(b)(4)(A) is the date of service of a bank execution served according to the Connecticut statutory scheme. I have considered all other arguments raised by the Debtor and find them to be without merit.

This is a final order subject to traditional rights of appeal, with a fourteen (14) day appeal period. *See*, Fed.R.Bankr.P. 8001, *et seq.*, Fed.R.Bankr.P. 8002(a)(1); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582 (Jan. 14, 2020).

**ACCORDINGLY**, it is hereby

**ORDERED**: That, the Motion for Summary Judgment, AP-ECF No. 22, is **GRANTED**; and it is further

**ORDERED**: That, this adversary proceeding is **DISMISSED**.

Dated this 22nd day of June, 2020, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut